**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| ROBERT BUCHANAN<br>11651 Morbourne Dr., Apt. 315<br>Cincinnati, OH 45240 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| KADANT BLACK CLAWSON, LLC<br>1425 Kingsview Drive<br>Lebanon, OH 45036 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve Also:**<br>KADANT BLACK CLAWSON, LLC<br>c/o Corp. Service Co. (Stat. Agent)<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff, Robert Buchanan, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Buchanan is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant KADANT BLACK CLAWSON, LLC is a foreign-incorporated company that conducts business within the state of Ohio.

3. The relevant locations of the events and omissions of this Complaint took place were 1107 North Main Street, Suite 105, Celina, OH 45822.

4. Kadant is, and was at all times hereinafter mentioned, Buchanan's employer within the meaning of The Americans with Disability Act ("ADA") 42 U.S.C. § 12101, R.C. § 4101 et seq., and R.C. § 4112 et seq.

5. Within 300 days of the adverse employment actions described herein, Buchanan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-01847 ("EEOC Charges").

6. On or about September 9, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Buchanan regarding the EEOC Charge.

7. Buchanan received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Buchanan has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Buchanan has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Warren County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff is alleging federal law claims under the ADA.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

15. Buchanan is a former employee of Kadant.

16. At all times noted herein, Buchanan was qualified for his position(s) at Kadant.

17. At all times noted herein, Buchanan could fully perform the essential functions of his job(s), with or without a reasonable accommodation.

18. Buchanan worked for Kadant as a VTL Machinist and Programmer from October 7, 2019, until Kadant unlawfully terminated Buchanan's employment on or about April 18, 2022.

19. Buchanan suffered an arm injury and has a 20% disability rating according to the Bureau of Worker's Compensation, placing him in a protected class for disability status.

20. Buchanan gave notice of his disability during his initial interview and was hired in early October 2019.

21. Buchanan trained for four months under lead Nate LNU, then switched to the night shift once he started working full time.

22. Around Spring 2020, one month into his regular employment, Buchanan started having issues with Nate LNU.

23. Nate LNU made complaints about Buchanan to plant manager Rob Shaw about Buchanan's speed with completing jobs.

24. Buchanan was slower than Nate LNU due to his disability and shorter time on the job.

25. Buchanan requested to engage in the interactive process of finding him a reasonable accommodation to help speed up his performance, but Kadant ignored this request.

26. This was a failure to engage in the interactive process of finding Buchanan a reasonable accommodation.

27. On or around January 20, 2021, Buchanan received his first write up.

28. Around this time, a new lead, Rodney Bates, took over for Nate LNU.

29. Bates told Buchanan to complete a cylinder project by finishing the O.D. part and the height. This was standard procedure to finish these parts, and Buchanan followed Bates's orders.

30. However, Bates had given Buchanan wrong instructions, which caused the router to be missing from the product. Buchanan was written up for Bates's mistake.

31. Disparately, Kadant did not wrongly discipline able-bodied employees for the mistakes of others.

32. On or around April 28, 2021, an employee from the day shift fell into a machine and broke his ribs.

33. Buchanan worked night shift, so he did not witness the situation.

34. However, Buchanan was written up for not having cleaned the machine, causing the employee to fall. Buchanan was written up for the day shift employee's mistake.

35. Disparately, Kadant did not wrongly discipline able-bodied employees for the mistakes of others.

36. On or around August 23, 2021, Bates told Buchanan to tram a conforming part.

37. Bates claimed the top bore was different from the bottom bore, but Buchanan had significant experience and knew the part was good as is. This part was sold to the customer as is without any issue.

38. However, Buchanan was written up for this as well, despite that the part conformed to the customer's requests.

39. Disparately, Kadant did not wrongly discipline able-bodied employees for creating parts according to customers' specifications.

40. On or around February 1, 2022, Buchanan was written up for an incident that happened the day before.

41. Towards the end of Buchanan's shift, he was working on a part and left a tool mark on the part which needed to be cleaned up.

42. Buchanan left detailed instructions for the day shift operator to follow to fix the issue, and even wrote at the bottom he could fix it himself the next day if he needed to.

43. This would have been a simple fix. However, the day shift operator was a new hire, and took the decision to weld it onto a machine without correcting the issue.

44. Buchanan was punished for the decision the day shift operator took.

45. Disparately, Kadant did not wrongly discipline able-bodied employees for the mistakes of others.

46. On or around April 11, 2022, Buchanan received his final warning.

47. One of the projects on Buchanan's machine had issues with porosity, making the part unfit to be welded.

48. Buchanan reported this to night shift supervisor Preston Hunnicutt, who had him reweld the job.

49. Buchanan was not able to fix the porosity issue all the way without violating the flange thickness, which would have made the part useless.

50. Buchanan had to spend a week fixing this part due to issues caused with the initial weld, which Buchanan didn't do. He was written up for this.

51. Disparately, Kadant did not wrongly discipline able-bodied employees for the mistakes of others.

52. On or around April 18, 2022, Buchanan was called into a meeting with Rob Shaw (plant manager) and Hunnicutt, and his employment was terminated.

53. Buchanan suffers from an injury to his right arm, which caused him to receive a 20% disability rating from the Bureau of Worker's Compensation, and therefore is disabled.

54. During his time at Kadant, Buchanan faced repeated instances of disability discrimination for this.

55. Buchanan was written up five times, which led to his termination. However, none of these write ups were for issues Buchanan caused.

56. Able bodied employees did not have to take the blame for the mistakes of their coworkers the way Buchanan had to or receive baseless write ups like this.

57. Furthermore, Nate LNU would hurry Buchanan and complained about his speed in completing projects.

58. However, Buchanan is disabled, and needs more time to complete projects compared to able-bodied employees.

59. By not giving Buchanan extra time to complete projects, and by failing to discuss other alternative accommodations, Kadant failed to accommodate him, and did not engage in the interactive process of finding a reasonable accommodation.

60. Giving Buchanan extra time for projects would not have caused an undue hardship on Kadant.

61. Buchanan made a protected complaint of disability discrimination to Kadant on or around August 23, 2021, when given his write up.

62. Buchanan again complained on February 1, 2022, and April 11, 2022, of disability discrimination, making additional protected complaints.

63. On or around April 18, 2022, Buchanan's employment was terminated.

64. Buchanan made a protected complaint of workplace safety on or around February 1, 2022, when the day shift employee who was a new hire made the decision to weld the faulty part onto the machine.

65. Soon after, on or around April 18, 2022, Buchanan's employment was terminated, citing this write up as one of the reasons why.

66. By terminating an employee for making a protected complaint of workplace safety, Kadant discourages employees from reporting threats to workplace safety, thereby jeopardizing the public policy.

67. Kadant did not have an overriding justification for the dismissal.

68. Alternatively, Kadant's cited reason for termination was pretextual.

69. The above facts demonstrate that Defendant engaged in a pattern and practice of disability discrimination.

70. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.

71. There was a causal connection between Buchanan's disability and Defendant's termination of Buchanan.

72. As a result of Kadant's acts and omissions, Buchanan has suffered, and will continue to suffer, damages.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

73. Buchanan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

74. Buchanan is disabled.

75. In the alternative, Defendant perceived Buchanan as being disabled.

76. Buchanan's condition constituted a physical impairment.

77. Buchanan's condition substantially impaired one or more of his major life activities including working.

78. Defendant perceived Buchanan's condition to substantially impair one or more of his major life activities including working.

79. Defendant treated Buchanan differently than other similarly-situated employees based on his disabling condition.

80. Defendant treated Buchanan differently than other similarly-situated employees based on his perceived disabling condition.

81. On or about April 18, 2022, Defendant terminated Buchanan's employment without just cause.

82. Alternatively, Defendant's cited reason for Buchanan's termination was pretext.

83. Defendant terminated Buchanan's employment based on his disability.

84. Defendant terminated Buchanan's employment based on his perceived disability.

85. Defendant violated R.C. § 4112.02 when it discharged Buchanan based on his disability.

86. Defendant violated R.C. § 4112.02 when it discharged Buchanan based on his perceived disability.

87. Defendant violated R.C. § 4112.02 by discriminating against Buchanan based on his disabling condition.

88. Defendant violated R.C. § 4112.02 by discriminating against Buchanan based on his perceived disabling condition.

89. Buchanan suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

90. As a direct and proximate result of Defendant's conduct, Buchanan suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

91. Buchanan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. Buchanan is disabled.

93. In the alternative, Defendant perceived Buchanan as being disabled.

94. Buchanan's condition constituted a physical impairment.

95. Buchanan's condition substantially impaired one or more of his/her major life activities including working.

96. Defendant perceived Buchanan's condition to substantially impair one or more of his major life activities including working.

97. Defendant treated Buchanan differently than other similarly-situated employees based on his disabling condition.

98. Defendant treated Buchanan differently than other similarly-situated employees based on his perceived disabling condition.

99. On or about April 18, 2022, Defendant terminated Buchanan's employment without just cause.

100. Alternatively, Defendant's cited reason for Buchanan's termination was pretext.

101. Defendant terminated Buchanan's employment based on his disability.

102. Defendant terminated Buchanan's employment based on his perceived disability.

103. Defendant violated the ADA when it discharged Buchanan based on his disability.

104. Defendant violated the ADA when it discharged Buchanan based on his perceived disability.

105. Defendant violated the ADA by discriminating against Buchanan based on his disabling condition.

106. Defendant violated the ADA by discriminating against Buchanan based on his perceived disabling condition.

107. Buchanan suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

108. As a direct and proximate result of Defendant's conduct, Buchanan suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: FAILURE TO ACCOMMODATE UNDER THE ADA

109. Buchanan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

110. Buchanan informed Defendant of his disabling condition.

111. Buchanan requested accommodations from Defendant to assist with his disabilities.

112. Buchanan's requested accommodations were reasonable.

113. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

114. Defendant failed to engage in the interactive process of determining whether Buchanan needed an accommodation.

115. Defendant failed to provide an accommodation.

116. Defendant violated the ADA.

117. As a direct and proximate result of Defendant's conduct, Buchanan suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT IV: FAILURE TO ACCOMMODATE UNDER R.C. 4112.01 et seq.**

118. Buchanan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

119. Buchanan informed Defendant of his disabling condition.

120. Buchanan requested accommodations from Defendant to assist with his disabilities.

121. Buchanan's requested accommodations were reasonable.

122. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

123. Defendant failed to engage in the interactive process of determining whether Buchanan needed an accommodation.

124. Defendant failed to provide an accommodation.

125. Defendant violated R.C. § 4112.02 by failing to provide Buchanan a reasonable accommodation.

126. Buchanan suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

127. As a direct and proximate result of Defendant's conduct, Buchanan suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT V: RETALIATORY DISCRIMINATION**

128. Buchanan restates each and every prior paragraph of this complaint, as if it were fully restated herein.

129. As a result of the Defendant's discriminatory conduct described above, Buchanan complained about the disability discrimination he was experiencing.

130. Subsequent to Buchanan reporting of disability discrimination to his employer, Buchanan's employment was terminated.

131. Defendant's actions were retaliatory in nature based on Buchanan 's opposition to the unlawful discriminatory conduct.

132. Pursuant to R.C. §4112.02(I) and the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

133. Buchanan suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA and R.C. § 4112.01 *et seq*.

134. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Buchanan, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

135. Buchanan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

137. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if he is terminated in retaliation for reporting to his employer that he is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990),

49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

138. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

139. During the scope of his employment, Buchanan reported unsafe working conditions caused by new hires.

140. Defendant's termination of Buchanan jeopardizes these public policies.

141. Defendant's termination of Buchanan was motivated by conduct related to these public policies.

142. Defendant had no overriding business justification for terminating Buchanan.

143. As a direct and proximate result of Defendant's conduct, Buchanan has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Buchanan demands from Defendant the following:

a) Issue a permanent injunction:

　　i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

　　ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

　　iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal

        responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Buchanan's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Buchanan for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Buchanan's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
     Trial Attorney
Brianna R. Carden (0097961)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Robert Buchanan*

## JURY DEMAND

Plaintiff Robert Buchanan demands a trial by jury by the maximum number of jurors permitted.

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)

15